UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                              Plaintiff,

                  -against-

JOSEPH & SON RESTORATION INC. *et al.*,

                            Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
20 CV 1897 (WFK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

        On April 24, 2020, plaintiff American Empire Surplus Lines Insurance Company ("American Empire" or "plaintiff") commenced this action against defendants Joseph & Sons Restoration Inc. ("Joseph" or "defendant"), Alberto Rivera, HP Lafayette Boynton Housing Development Fund Company Inc., Lafayette Nelson Apartments, LLC, and David Ballinas, seeking judgment in the amount of $1,121,764, plus interest and attorney's fees, for additional premiums owed by Joseph under two insurance policies issued by plaintiff to Joseph. (Compl.[1] ¶¶ 33-36). In the event that Joseph fails to pay the amount of the judgment, American Empire seeks a declaration that it has no obligation to defend and/or indemnify Joseph under the American Empire policies. (Id. ¶¶ 39, 42).

        By notice of motion dated May 6, 2021, American Empire moves for summary judgment. (See ECF No. 35). The motion was referred to the undersigned to prepare a Report and Recommendation. (See Electronic Order Referring Motion, dated May 7, 2021). For the reasons set forth below, it is respectfully recommended that plaintiff's motion for summary judgment and prejudgment interest be granted but its motion for attorney's fees and declaratory judgment be

---

[1] Citations to "Compl." refer to the Complaint, filed April 24, 2020, ECF No. 1.

1

denied without prejudice.

## FACTUAL BACKGROUND

Plaintiff American Empire issued a Commercial General Liability insurance policy to Joseph, bearing Policy Number 18CG0219372 (the "Primary Policy"[2]), along with an Excess Liability Policy, bearing Policy Number 18CX0219373 (the "Excess Policy"[3]), for the period March 3, 2018 to March 3, 2019 (collectively, the "Policies"). (Pl.'s 56.1 Stmnt[4] ¶ 1; cf. Def.'s 56.1 Stmnt[5] ¶ 1[6]). The premiums owed on the Policies were computed based on a percentage of Joseph's gross receipts during the policy period. (Pl.'s 56.1 Stmnt ¶ 2; Def.'s 56.1 Stmnt ¶ 2).

American Empire assigned Advance Premiums to the Policies based on an estimate of Joseph's gross receipts, subject to an adjustment, or endorsement, if the receipts exceeded the initial estimates. (Pl.'s 56.1 Stmnt ¶¶ 3-4 (citing Myers Aff.[7] ¶ 5 and quoting the Primary Policy, Section IV, ¶ 5); Def.'s 56.1 Stmnt ¶¶ 3-4). The Primary Policy contains a provision that states that it is subject to a "minimum policy premium" that applies unless an audit determines that a greater premium is warranted; "[i]n no event shall the premium be less than the minimum policy premium should the policy remain effective the complete policy term." (Pl.'s 56.1 Stmnt ¶ 5 (citing Myers Aff. ¶ 6 and quoting the Primary Policy at 44); Def.'s 56.1 Stmnt ¶ 5). The Policy also contains a condition making Joseph "responsible for the payment of all premiums" and

---

[2] Citations to the "Primary Policy" refer to the Commercial General Liability Policy, filed May 6, 2021, ECF No. 37-1.
[3] Citations to the "Excess Policy" refer to the Excess Policy, filed May 6, 2021, ECF No. 37-2.
[4] Citations to "Pl.'s 56.1 Stmnt" refer to plaintiff's Statement Pursuant to Local Rule 56.1, ECF No. 38.
[5] Citations to "Def.'s 56.1 Stmnt" refer to defendant's Response to plaintiff's Local Rule 56.1 Statement, ECF No. 43.
[6] Although Joseph admits that American Empire issued these policies, defendant contends that the coverage period for both policies ran from March 13, 2018 to March 13, 2019. (Def.'s 56.1 Stmnt ¶ 1 (citing the Primary Policy at 6 and the Excess Policy at 5)). However, because the dates of coverage are not at issue, nor do the dates of coverage affect the award, this Court need not address the discrepancy.
[7] Citations to "Myers Aff." refer to Affidavit of Randy Myers in Support of Plaintiff's Motion for Summary Judgment, dated April 23, 2021, ECF No. 37.

permitting examination of Joseph's books and records at any time during the Policy period and up to three years after. (Pl.'s 56.1 Stmnt ¶¶ 6-7 (citing Myers Aff. ¶¶ 7-8 and quoting the Primary Policy at 3); Def.'s 56.1 Stmnt ¶¶ 6-7). The Excess Policy contains a provision for calculating an advance premium and similarly provides for a minimum policy premium unless an audit determines that a greater premium applies. (Pl.'s 56.1 Stmnt ¶ 8 (citing Myers Aff. ¶ 12 and quoting Excess Policy at 10); Def.'s 56.1 Stmnt ¶ 8).

Matson Driscoll & Damico LLP audited Joseph's financial records to determine actual gross receipts during the Policy period and issued its results on December 10, 2019. (Pl.'s 56.1 Stmnt ¶ 9; Def.'s 56.1 Stmnt ¶ 9; see Myers Aff., Exs. 4 & 5). As a result of the audit, it was determined that Joseph owed an additional premium under the Primary Policy of $857,869 and an additional premium under the Excess Policy of $263,895, for a total of $1,121,764. (Pl.'s 56.1 Stmnt ¶ 10 (citing Myers Aff., Exs. 4 & 5); Def.'s 56.1 Stmnt ¶ 10). Although plaintiff has made due demand to Joseph, the amounts owed remain unpaid. (Pl.'s 56.1 Stmnt ¶ 11; Def.'s 56.1 Stmnt ¶ 11). American Empire further asserts that to date, it has incurred attorney's fees and expenses in the amount of $29,639 in its efforts to collect the premium amounts owed. (Pl.'s 56.1 Stmnt ¶ 12 (citing Myers Aff. ¶ 16)). Defendant disputes that American Empire is entitled to these fees. (See Def.'s 56.1 Stmnt ¶ 12).

On December 3, 2019, Alberto Rivera commenced an action in New York State Supreme Court, Bronx County, alleging that he sustained injuries on or about November 19, 2018 while performing construction related work in the Bronx. (Pl.'s 56.1 Stmnt ¶¶ 13-14; Def.'s 56.1 Stmnt ¶¶ 13-14); see Alberto Rivera v. HP Lafayette Boynton Housing Development Fund Company Inc. and Lafayette Nelson LLC, Index No. 33628/2018E (Bronx Cnty. Sup. Ct. 2018). A separate action was commenced on the same date in Bronx County Supreme Court by David

Ballinas, who similarly alleges that he was injured on or about November 19, 2018 while performing construction work. (Pl.'s 56.1 Stmnt ¶¶ 16-17; Def.'s 56.1 Stmnt ¶¶ 16-17);[8] see David Ballinas v. HP Lafayette Boynton Housing Development Fund Company Inc. and Lafayette Nelson LLC, Index No. 33627/2018E (Bronx Cnty. Sup. Ct. 2018).

Following the filing of this federal Complaint, defendant Joseph filed an Answer and the parties exchanged of certain discovery. (See ECF No. 24; Electronic Minute Entry, dated December 30, 2020). Plaintiff now moves for summary judgment, seeking to recover the outstanding amount owed by Joseph in unpaid premiums under the Policies. (Pl.'s Mem.[9] at 2-3). Plaintiff also seeks a declaration that it has no obligation to defend or indemnify Joseph in either the Rivera or Ballinas actions, and it seeks an award of attorney's fees and prejudgment interest.

## DISCUSSION

**A. Standard for Summary Judgment**

It is well-settled that a party moving for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") has the burden of establishing that no genuine issue of material fact is in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at

---

[8] Plaintiff alleges that coverage under the American Empire Policies may be implicated by these two state court actions and has named Ballinas and Rivera as defendants in this federal action. (Pl.'s 56.1 Stmnt ¶¶ 15, 18). However, neither Ballinas or Rivera have appeared in this case and plaintiff has filed a motion for default judgment declaring that they are bound by the outcome of this action. (Id. ¶ 19). The motion for default judgment is not addressed here.

[9] Citations to "Pl.'s Mem." refer to the Memorandum of Law on Behalf of Plaintiff American Empire Surplus Lines Insurance Company in Support of Its Motion for Summary Judgment, filed May 6, 2021, ECF No. 39.

Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that "[s]ummary judgment is a drastic remedy and should be applied sparingly"), a court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial." Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (internal quotation marks and citations omitted), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Coon v. Town of Springfield, Vermont, 404 F.3d 683, 685 (2d Cir. 2005) (stating that the court must "draw all factual inferences and resolve all ambiguities in favor" of the nonmoving party).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248.

Rule 56 provides that, in moving for summary judgment or responding to such a motion, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . .

5

. citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Rule 56's "requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" Patterson v. County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)). While the Court need consider only the materials cited by the parties, it may consider any other materials in the record in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).

**B. Analysis**

    1) Failure to Pay Premiums Owed

Plaintiff's claim is based on a breach of the terms of the Policies. Since insurance policies are "interpreted according to the rules of contract interpretation," plaintiff's Complaint alleging that defendant Joseph failed to pay premiums owed under the Policies is analyzed as a breach of contract claim. Frazer Exton Dev., L.P. v. Kemper Env., Ltd., 153 Fed. App'x 31, 32 (2d Cir. 2005); see American Empire Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc., No. 16 CV 1541, 2017 WL 4118390, at *3 (E.D.N.Y. Aug. 30, 2017) (noting that "an insurance policy is a contract" (citations omitted)). Under New York law, a plaintiff seeking to establish a claim for breach of contract must show: (1) the formation of a contract between

6

the parties; (2) performance by plaintiff; (3) failure to perform by defendant; and (4) damages. Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015).

Plaintiff has provided the Court with copies of the two American Empire Policies, both of which list defendant Joseph as the "named insured." (Primary Policy at 6; Excess Policy at 5). The Policies provide that in exchange for the payment of premiums, American Empire will provide coverage during the year that the Policies were in effect. (Primary Policy at 6; Excess Policy at 5). Thus, plaintiff has established the first element of the test, demonstrating that there was a contract between American Empire and Joseph. See American Empire Surplus Lines Ins. Co. v. B&B Iron Works Corp., No. 18 CV 6384, 2021 WL 4439760, at *4 (E.D.N.Y. Sept. 28, 2021) (noting that submission of an insurance policy with the defendant named as insurer is sufficient to establish existence of an agreement).

As for the second and third elements, American Empire asserts that it performed its obligations under the Policies by providing coverage during the policy period, but defendant Joseph failed to pay premiums, contrary to its obligations under the Policies. (Myers Aff. ¶ 15; Pl.'s Mem. 8-9). The Policies provide for the payment of premiums based on estimated gross receipts, plus any additional amounts determined by subsequent audits. (Primary Policy at 44; Excess Policy at 10). Any additional amount is termed an "endorsement." (Pl.'s 56.1 Stmnt ¶ 5). Here, plaintiff has submitted the audit statement and the Affidavit of Mr. Myers demonstrating the amounts of additional premiums owed following the audit. (Pl.'s Mem. at 8-11; Myers Aff. ¶ 14, Exs. 4 & 5). Plaintiff has also provided copies of the premium endorsements sent to Joseph showing that it received notice that it owed plaintiff additional amounts in premiums under the Policies. (Myers Aff. Exs. 4 & 5). Defendant does not dispute receiving notice of the endorsements. (See Def.'s 56.1 Stmnt ¶ 10-11). Based on the submission

of these documents, which constitute evidence demonstrating that, pursuant to an audit, the defendant owes additional amounts in premiums totaling $1,121,764, plaintiff has made a *prima facie* showing that it is entitled to summary judgment. See Burlington Ins. Co. v. Casur Corp., 123 A.D.3d 965, 966, 1 N.Y.S.3d 150, 150 (2d Dep't 2014) (finding "prima facie entitlement to judgment as a matter of law" when plaintiff submitted the insurance policy, affidavit, and audit statement); see also Evanston Ins. Co. v. Po Wing Hong Food Market, Inc., 21 A.D.3d 333, 334, 800 N.Y.S.2d 396, 396 (1st Dep't 2005) (same).

As to the fourth element, defendant Joseph does not challenge any of the evidence presented by plaintiff in connection with its request for summary judgment on the issue of damages owed. (See Def.'s Opp.[10] at 1). Joseph's Memorandum of Law in opposition to plaintiff's motion for summary judgment focuses on plaintiff's second and third causes of action, which seek a declaration that American Empire has no duty to defend Joseph in the Rivera and Ballinas actions and attorney's fees. (Id.; see also Def.'s 56.1 Stmnt (admitting the portions of Pl.'s 56.1 Stmnt that deal with plaintiff's entitlement to premiums)). Joseph does not challenge the existence or terms of the Policies, dispute the evidence demonstrating that he failed to pay the premiums owed under the Policies, or contest the conclusion that it breached its obligations under the Policies. (See Reply Aff.[11] ¶¶ 4-5). Nor does it raise any challenge to the amounts determined by the audit to be owed. (Id.)

Since defendant does not advance any arguments disputing the material facts set out by plaintiff in support of its motion for summary judgment on the first claim in the Complaint, the Court respectfully recommends that plaintiff's motion for summary judgment be granted on its

---

[10] Citations to "Def.'s Opp." refers to defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed July 14, 2021, ECF No. 42.

[11] Citations to "Reply Aff." refer to plaintiff's Reply Affidavit in Further Support of Motion for Summary Judgment, filed July 27, 2021, ECF No. 44.

8

claim that Joseph owes plaintiff $1,121,764.[12]  See, e.g., Arch Specialty Ins. Co. v. TDL Restoration, Inc., No. 18 CV 6712, 2021 WL 1225447, at *6 (S.D.N.Y. Mar. 31, 2021) (granting partial summary judgment where defendant acknowledged that there was a contract, plaintiff performed its duties, and premiums were unpaid, but denying summary judgment as to disputed damages); see also Dubay v. Trans-Am. Ins. Co., 75 A.D.2d 312, 316, 429 N.Y.S.2d 449, 452 (2d Dep't 1980) (affirming summary judgment where defendant did not dispute facts set forth by plaintiff); Mecca v. Metropolitan Life Ins. Co., 266 A.D. 910, 910, 42 N.Y.S.2d 452, 453 (1st Dep't 1943) (affirming summary judgment where plaintiff "failed to set forth any facts controverting" defendant's claim).

    2)  Prejudgment Interest

Pursuant to New York Civil Practice Law and Rules Sections 5001(a) and (b), plaintiff seeks an award of interest, calculated at the rate of 9% per annum from December 10, 2019, the date the audit endorsements were sent to Joseph advising of the unpaid premium amounts.  (Pl.'s Mem. at 12).  Sections 5001(a) and (b) provides that interest will accrue "from the earliest ascertainable date the cause of action existed" when a "sum [is] awarded because of a breach of performance of a contract."  N.Y. C.P.L.R. §§ 5001(a), (b).  The interest rate is "nine per centum per annum."  N.Y. C.P.L.R. § 5004.  Defendant does not appear to dispute plaintiff's entitlement to interest accrued on the unpaid premiums, and at least one court has fixed the cause of action date as the date of the audit.  See American Empire Surplus Lines Ins. Co. v. Disano Demolition Co., No. 18 CV 5047, 2021 WL 21722, at *3 (E.D.N.Y. Jan. 4, 2021); see also

---

[12] This is not a case where the undisputed facts are not supported by the record; the Policies provided illustrate that there was a contract and there is no evidence of payment for the coverage plaintiff provided.  See Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) (holding that a court must ensure that a 56.1 Statement is supported by evidence in the record even where facts allegedly undisputed).

9

Quincy Mut. Fire Ins. Co. v. New York Cent. Mut. Fire Ins. Co., 89 F. Supp. 3d 291, 313 (N.D.N.Y. 2014) (fixing date from which interest began accruing as the date that the opposing party learned of the unpaid premiums).

Thus, it is respectfully recommended that plaintiff be awarded 9% in interest, calculated from December 10, 2019 until payment is made.

3) Attorney's Fees

Plaintiff also seeks an award of attorney's fees and expenses incurred in prosecuting this action in the amount of $29,639. (Pl.'s Mem. at 13). Although plaintiff acknowledges the general "American Rule" that a prevailing litigant is not ordinarily entitled to fees from the losing party, see Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975), plaintiff argues that in this case, defendant acted in bad faith by raising defenses, none of which were valid, thereby forcing plaintiff to expand the scope of the litigation, engage in discovery, and extend the litigation. (Pl.'s Mem. at 13). Citing Hall v. Cole, plaintiff argues that "when [an] opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons,'" the court may award counsel fees to a successful party, recognizing that "the underlying rationale of 'fee shifting' is, of course, punitive. . . ." (Id. (citing 412 U.S. 1, 5 (1973) (internal citations omitted))).

Defendant opposes an award of fees, noting that neither of the Policies provide for such an award and plaintiff has failed to cite any statutory or other authority to justify such an award. (Def.'s Opp. at 3-4). Defendant also disputes plaintiff's claim that defendant has acted in "bad faith," arguing that all Joseph has done is served an Answer to the Complaint and made plaintiff carry its burden of proof on all of its claims. (Id. at 4). Finally, defendant states that, even if attorney's fees were appropriate here, plaintiff has failed to tie any specific fees to defendant's

10

alleged bad faith conduct, instead simply seeking all of its fees incurred in connection with this action. (Id. (relying on Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1183-84 (2017))). In its reply, plaintiff argues that, because defendant was aware of the uncontested audit results on December 10, 2019, defendant's attempt to litigate the premiums for the past 18 months are in bad faith. (Reply Aff. ¶ 14).

As defendant accurately pointed out, plaintiff cites only Hall v. Cole as a basis for attorney's fees and provides no other argument or case law regarding which of the various avenues under which this Court could award the attorney's fees plaintiff is requesting as a sanction. Plaintiff states only that "[n]one of Joseph's claimed defenses were valid." (Pl.'s Mem. at 13). Although such a failure to "even reference the relevant rule" when requesting sanctions is "alone sufficient to deny" plaintiff's motion, this Court will attempt to discern the basis for plaintiff's motion. See Morrison v. Millenium Hotels, No. 18 CV 06811, 2021 WL 1534293, at *9 (S.D.N.Y. Apr. 19, 2021).

In Chambers v. NASCO, Inc., the Supreme Court held that courts have "inherent power" to "discipline [those] who appear before it" including by "impos[ing] monetary sanctions against a litigant (or its counsel) for misconduct." 501 U.S. 32, 44-46 (1991). This power should only be used to sanction "bad faith, vexatious, or wanton acts." International Techs. Mktg., Inc. v. Verint Sys., Ltd., 991 F.3d 361, 368 (2d Cir. 2021) (internal quotation marks and alterations omitted) (quoting Chambers v. NASCO, Inc., 501 U.S. at 44). More specifically, "sanctions are not appropriate unless the challenged actions are (1) entirely without color and (2) motivated by improper purposes. . . ." Milltext Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 38 (2d Cir. 1995) (emphasis added) (internal quotations omitted). Due process requires notice and

11

opportunity to be heard before imposition of "any kind of sanctions." Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at *5 (quotations and citations omitted).[13]

Again, although the basis for sanctions is unclear, it appears that plaintiff is alleging that defendant should not have claimed, in its Answer, that it "lack[ed] knowledge or information sufficient to form a belief as to the truth of the allegations" in the Complaint which set forth the facts regarding the audit nor denied that it owed the $1,121,764 due to plaintiff. (See Compl. ¶¶ 23-25; Answer[14] ¶¶ 23-25). While Federal Rule of Civil Procedure 11(b), which requires that an attorney must certify that, after a reasonable inquiry, "the factual contentions have evidentiary support," may be a more appropriate basis for sanctions regarding an answer, this Court has not held a show cause hearing as required by the Rule before imposing sanctions. See Fed. R. Civ. P. 11(c). Thus, the Court is left with its inherent power to sanction. See Chambers v. NASCO, Inc., 501 U.S. at 50 (finding that federal court can impose sanctions in the form of attorney's fees under their inherent power as well as pursuant to Federal Rule of Civil Procedure 11).

As noted previously, defendant's actions must have been both meritless and taken for an improper purpose. See Petrello v. White, No. 01 CV 3082, 2011 WL 8198105, at *5 (E.D.N.Y. Mar. 3, 2011), report and recommendation adopted, 2012 WL 2803759 (E.D.N.Y. July 10, 2012). Even if a defendant's claims are "questionable at best," as long as there is some factual

---

[13] The Court finds that both defendant and defense counsel have been afforded due process because they were on notice of, and had the chance to respond to, the request for sanctions in the form of attorney's fees. Both defense counsel and defendant through counsel had an opportunity to respond to plaintiff's request for sanctions in their opposition. (See Pl.'s Mem (filed March 6, 2021); Def.'s Opp. (filed July 14, 2021)). At least one court in this district have found such motion practice sufficient to satisfy the due process requirement. See, e.g., Alvarez v. 894 Pizza Corp., No. 14 CV 6011, 2016 WL 4536574, at *7 (E.D.N.Y. Aug. 2, 2016), report and recommendation adopted, 2016 WL 4540817 (E.D.N.Y. Aug. 30, 2016) (noting that "[i]n the context of sanctions, 'the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard'" (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 335 (2d Cir. 1999))).

[14] Citations to "Answer" refer to defendant Joseph's Answer, filed July 1, 2020, ECF No. 16.

support, sanctions are unwarranted. See id. at *6. Here, defendant only answered that it lacked sufficient knowledge or belief as to the audit and denied that it owed plaintiff the alleged deficient premiums. As one court in this district has held, albeit in the context of Rule 11 sanctions, "it does not follow that, because the defendants conceded liability, they had no good faith basis for denying it earlier, even if the basis for that denial was a question of the plaintiff's ability to prove it." Continental Sweden Corp. v. M.P. Howlett, Inc., 719 F. Supp. 1202, 1216 (S.D.N.Y. 1989). Nor is this the sort of case where a defendant continues to insist on an untenable position, which has served as a basis for sanctions. See Raff v. Maggio, 743 F. Supp. 147, 150-152 (E.D.N.Y. 1990) (imposing sanctions where defendant insisted through several levels of appeals that he did not have to pay mandatory arbitration fees). In fact, defendant, within a year of filing its Answer, conceded the facts regarding the audit and that it owes plaintiff the unpaid premiums. (See Def.'s Opp.).

Further, even if the statements contained in the Answer were meritless, the second prong, improper purpose, must be characterized by "a high degree of specificity." Estate of Warhol, 194 F.3d at 336. In Petrello v. White, the court refused to award attorney's fees, stating that, while the litigation took "far longer" than plaintiffs anticipated, plaintiffs "failed to address the improper conduct warranting attorneys' fees with the specificity required." 2011 WL 8198105, at *7. Similarly, here, plaintiff alleges only that it was forced to "engage in discovery and extended litigation" (Pl.'s Mem. at 13), but does not cite any specific instances of bad faith conduct.

As such, the Court respectfully recommends that plaintiff's request for attorney's fees be denied without prejudice.

13

4) <u>Plaintiff's Declaratory Judgment Motion</u>

The second and third causes of action in plaintiff's Complaint seek a declaration that it has no obligation to defend or indemnify under the Policies, including in the <u>Rivera</u> and <u>Ballinas</u> lawsuits, provided that defendant does not pay the outstanding premiums. (Compl. ¶¶ 37-42). However, plaintiff has not asserted that, should defendant pay the outstanding premiums, it would have no duty to defend the <u>Rivera</u> and <u>Ballinas</u> actions. The Second Circuit has held that when a declaratory judgment will serve a useful purpose in clarifying the legal relationships at issue or when it will terminate and afford relief from the "uncertainty, insecurity and controversy" underlying the proceedings, then a declaratory judgment is appropriate. <u>See</u> <u>Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 411 F.3d 384, 389 (2d Cir. 2005); <u>Broadview Chem. Corp. v. Loctite Corp.</u>, 417 F.2d 998, 1001 (2d Cir. 1969); <u>see also</u> <u>Government Employees Ins. Co. v. Infinity Health Prods., Ltd.</u>, No. 10 CV 5611, 2012 WL 1427796, at *4 (E.D.N.Y. Apr. 6, 2012). Importantly, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Rosen v. Mega Bloks Inc.</u>, No. 06 CV 3474, 2009 WL 929474, at *3 (S.D.N.Y. Apr. 7, 2009) (quoting <u>Olin Corp. v. Consolidated Aluminum Corp.</u>, 5 F.3d 10, 17 (2d Cir. 1993)), <u>report and recommendation adopted</u>, 2009 WL 1392538 (S.D.N.Y. May 19, 2009).

In this case, plaintiff argues "in the event Joseph fails to satisfy the judgment," plaintiff seeks a judgment declaring that it has no obligation to indemnify defendant in the <u>Rivera</u> and <u>Ballinas</u> actions. (Pl.'s Mem. 1; <u>see also</u> Def.'s Opp at 2 (noting contingency)). Citing the decision in <u>American Empire Surplus Lines Ins. Co. v. Barca Restoration Corp.</u> ("<u>Barca</u>"), No. 18 CV 7033, 2020 WL 1853227 (E.D.N.Y. Mar. 4, 2020), defendant argues there is no justiciable controversy at this time that would make this coverage issue real. (Def.'s Opp. at 2).

14

In Barca, the court denied American Empire's request for a declaratory judgment, finding that it had failed to "show a practical likelihood that the contingency of being called upon to defend or indemnify Defendant under the Policy will occur." 2020 WL 1853227, at *5. Further, the Barca court emphasized another "non-materialized scenario[]:" that the declaration is necessary "only in the event that defendant does not pay the outstanding premium amount." Id. Defendant contends that American Empire has not alleged that it is currently defending Joseph in either the Rivera or Ballinas actions but simply speculating that coverage under the Policies may come into play in the future. (Def.'s Opp. at 3). Defendant further argues that, given the condition that the declaratory judgment would not come into effect unless defendant fails to pay, there are events that may make this declaratory relief "wholly improper." (Id.)

In Reply, plaintiff notes that the court in Barca awarded judgment in favor of the plaintiff but denied without prejudice the request for a declaratory judgment because there were no claims pending at that time. (Reply Aff. ¶ 7); Barca, 2020 WL 1853227, at * 5. Plaintiff distinguishes the instant case from Barca, explaining that while there was no pending action in Barca at the time that would trigger plaintiff's obligation to defend, here, claims have been made under both the Policies at issue by in the Rivera and Ballinas actions. (Myers Reply Aff.[15] ¶ 7). Moreover, American Empire confirms that it is currently providing a defense in both actions to Joseph and to the project owners as additional insureds. (Id. ¶ 10). Thus, plaintiff contends that the reasoning in Barca does not apply here.

Although one of the contingencies noted in Barca has disappeared because plaintiff has been defending the Rivera and Ballinas suits, the contingency surrounding payment remains. The Second Circuit has stated that, although a "liability may be contingent, [that] does not

---

[15] Citations to "Myers Reply Aff." refers to the Reply Affidavit of Randy Myers in Further Support of Motion for Summary Judgment, dated July 27, 2021, ECF No. 44-1.

necessarily defeat jurisdiction of a declaratory judgment action." Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d Cir. 1992).  Instead, courts "should focus on the practical likelihood that the contingency will occur." Cognetta v. Bonavita, 330 F. Supp. 3d 797, 813 (E.D.N.Y. 2018) (alterations and citations omitted).  Although there is a dearth of authority regarding declaratory judgments contingent on a failure to pay, at least one district court has held that the possibility of future payments is "not of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Medical Diagnostic Lab'ys, L.L.C. v. Protagonist Therapeutics, Inc., 298 F. Supp. 3d 1241, 1253 (N.D. Cal. 2018) (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)) (noting that payments on patents were contingent on various approvals and therefore declaratory judgment regarding entitlement to those payments was not ripe).  Here, the potential lack of future payments is not of "sufficient immediacy"; it is only speculative that defendant will not pay.

Further, "[u]nless the contingency is practically likely to occur," there is no controversy that is ripe for adjudication.  See United States Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co., 475 B.R. 347, 363 (S.D.N.Y. 2012).  Although this suit was instituted as a result of non-payment of premiums by defendant, there is no additional indication that defendant is unwilling or unable to pay the outstanding premiums.  (Cf. Def.'s 56.1 Stmnt ¶¶ 9-11 (declining to contest liability for the premiums)).  Thus, this Court cannot say that nonpayment is "practically likely to occur."

As such, it is respectfully recommended that plaintiff's motion for declaratory judgment be denied without prejudice to be refiled in the event that defendant does not pay the outstanding premiums.

CONCLUSION

The Court respectfully recommends that plaintiff's motions for summary judgment and pre-judgment interest be granted and plaintiff's motions for attorney's fees and declaratory judgment be denied without prejudice.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: November 5, 2021
      Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York